UNITED DISTRICT COURT
for the
DISTRICT OF MINNESOTA

Catherine Brennan,

    Plaintiff,

vs.

Minnesota Department of Human
Services, a Minnesota state agency,
Cass County Health, Human and
Veteran Services, Marsha McMillen,
Community Behavioral Health Hospital,
Essentia Health St. Joseph's Medical
Center, Essentia Health, Prairie
St. John's Hospital, Dr. David
Anderholm, d/b/a Northern Psychiatric
Associates

    Defendants.

**COMPLAINT/JURY TRIAL DEMANDED**

  Catherine Brennan, for her Complaint against the Defendants above named, states and alleges as follows:

### INTRODUCTION

  1. Plaintiff brings this action to obtain declaratory relief and money damages against the Defendants in their official capacities and individually for violating her constitutional rights to liberty and personal autonomy over her body by subjecting her to confinement against her will and forced to take neuroleptic medications which were harmful to Plaintiff and has caused permanent physical and emotional damage. This suit, including the prayer for declaratory relief, is necessary to ensure that Defendants do not continue to subject patients to illegal and

1

unconstitutional commitments and from subjecting patients to harmful medications through the seeking of court orders to forcibly inject such patients against their will. The Plaintiff alleges that the actions of the Defendants have violated her constitutional rights as alleged in Counts 1-4 giving rise to a cause of action under 42 U.S.C. §1983.

## JURSIDCITION AND VENUE

2. This is an action involving statutory and common law claims and federal civil rights claims seeking actual damages, statutory damages and attorney fees and declaratory judgment relief to prevent the deprivation of states rights and federal civil rights caused by the statutory violations and unconstitutional acts of the Defendants. This Court has jurisdiction of all of the state and federal claims invoked under Minn. Stat. §253B and 28 U.S.C. §§1331, 1332, 1343, 1367, §§2201 and 2202, and under 42 U.S.C. §§1983 and 1988.

3. This Court has diversity jurisdiction under 28 U.S.C. §1332.

4. Venue is appropriate in the District of Minnesota according to 28 U.S.C. §1291(b).

## THE PARTIES

5. Catherine Brennan is a resident of Pequot Lakes, Minnesota

6. Defendant Department of Human Services is now, and at all times mentioned was, a state agency existing under the laws of Minnesota, with a hospital located at Alexandria, Minnesota. On information and belief, defendant Community Behavioral Health Hospital in Alexandria, Minnesota is a part of the Minnesota Department of Human Services. Plaintiff was a patient at different times at the Community Behavioral Hospitals located in Baxter, Minnesota and Fergus Falls, Minnesota. The petition for authorization to administer the neuroleptic drugs was filed by employees of Community Behavioral Hospital and affidavits on behalf of the petition were filed by Dr. Aminar Ali and Julie Nohre on the hospital's behalf..

...
...
...
...
...

7. Defendant Cass County Health, Human and Veteran Services, on information and belief, is the county agency responsible for implementing Minnesota state laws regarding the civil commitment of individuals and decisions regarding the administration of neuroleptic drugs to individuals under their control.

8. Defendant Marsha McMillen, on information and belief, is an employee of defendant Cass County Health, Human and Veteran Services and is the individual responsible for the filing of the petition for civil commitment of the plaintiff.

9. Essentia Health St. Joseph's Clinic is a Minnesota corporation under Minn. Stat. 333 doing business under the name St. Joseph's Medical Center, located at 523 N. 3rd Street, Brainerd, MN 56401. Essentia Health is a Minnesota non-profit corporation under Minn. Stat. 317A with its principal office located at 502 East 2nd Street, Duluth, MN 55805. Essentia Health St. Joseph's Clinic, on information and belief, is operated by Essentia Health.

10. Prairie St. John's Hospital is a North Dakota corporation and psychiatric hospital located at 510 4th Street, Fargo, North Dakota 58103.

11. Dr. David Anderholm is the owner of Northern Psychiatric Associates, which has as its principal location an office at 7115 Farthun Road, #105, Baxter, MN 56425.

**FACTS**

12. Plaintiff was born on October 7, 1966, in St. Paul, Minnesota. Plaintiff currently resides at 6860 17th Avenue, Pequot Lakes, Minnesota with her husband, Tom Brennan. Plaintiff has six adult children, between the ages of 17 and 36, all of whom reside near Pequot Lakes.

13. Plaintiff graduated from Derham Hall in 1985 and was employed until 2015 as an English Teacher in Pine River, Minnesota. In 2007, Plaintiff was a finalist for Minnesota's Teacher of the Year.

14. Plaintiff took a new job for the school year beginning in the fall of 2014 in Pillager, Minnesota. Plaintiff immediately had regrets about changing jobs and suffered from anxiety and depression due to the job change. Plaintiff went to the Pillager office of the Pillager Health Clinic for an allergy shot. At that visit, a nurse practitioner prescribed Ambien and Prozac and Ativan for what was considered minor depression. At that time, the Plaintiff encountered her first symptoms of akathisia.

15. From September 3 – September 21, 2015, Plaintiff had multiple visits with Barbara Frey-Brown, APRN and CNP, at the Brainerd Medical Center Psychiatry of Essentia Health. Using inaccurate information, Barbara Frey – Brown was instrumental in having the Plaintiff involuntarily committed on September 30, 2015, Case No. 11-PR-17-475. In that proceeding, the Plaintiff was denied the right to her own counsel.

16. Plaintiff was hospitalized in November and December 2015 and again from January through March 2016 at the Community Behavioral Health Hospital in Baxter, Minnesota. On information and belief, the Plaintiff was first diagnosed with akathisia at that time but was not informed.

17. On March 8, 2017, Plaintiff was seen by Defendant Dr. Anderholm. From his notes, it appears that Plaintiff was diagnosed with akathisia but was never informed of that fact or the possible dangers and risks.

18. Plaintiff was committed for a second time on March 17, 2017. Plaintiff was forced by Cass County to continue seeing Dr. Anderholm for the remainder of Plaintiff's commitment. Plaintiff stopped seeing Dr. Anderholm in December 2017. Plaintiff's commitment, Case No. 11-PR- 17-475, was terminated on January 24, 2018.

19. Plaintiff began seeing Dr. Eric Johnson, Nystrom and Associates in Baxter, Minnesota in

4

2018. Dr. Johnson is Plaintiff's current psychiatrist who questioned Plaintiff's bipolar diagnosis. Dr. Johnson wrote a letter stating that Plaintiff had been misdiagnosed and should not be given anti psychotics and mood stabilizers. Dr. Johnson also diagnosed Plaintiff with tardive, or chronic, akathisia, PTSD, and Generalized Anxiety Disorder.

20. On August 24, 2019, Plaintiff was brought to the Emergency Department at St. Joseph's Medical Center, Essentia Health in Brainerd, Minnesota. A Petition for Commitment was filed that same day, Case No. 11-PR-19-1477, by Defendant Marsha McMillen, employed by Defendant Cass County Health, Human and veteran Services.

21. Prior to the time that the Plaintiff was formally committed and any hearing or order authorizing any of the Defendants to administer neuroleptic drugs, Plaintiff was sent to Prairie St. John's Hospital in Fargo, North Dakota where Plaintiff was confined from August 24, 2019 until September 23, 2019. Plaintiff's primary psychiatrist there was Dr. Ryan Greene, whose diagnosis was akathisia, brought on by Haldol injections.

22. Plaintiff was then sent to the Community Behavioral Health Hospital in Alexandria, Minnesota, where Plaintiff was treated by Dr. Ali, who also diagnosed Plaintiff with akathisia. Plaintiff was there from September 23, 201,8 until November 2019.

23. Plaintiff was then sent to the Anoka Regional Treatment Center in Anoka, Minnesota. Plaintiff was confined at that facility from early November2019 until January 2020. Plaintiff's primary psychiatrist there was Dr. Andrea Lundgren. Her diagnosis was akathisia. (Need notes)

24. From December 2020 until the present, Plaintiff has been treated at the University of Minnesota Fairview, in Minneapolis, Minnesota. Plaintiff is currently being treated by a team of doctors, which include psychiatry, integrative psychiatry, neurology and pharmacy. Plaintiff's current doctors confirmed the diagnosis of tardive, which is chronic, not late onset, akathisia.

5

Plaintiff has also been diagnosed with PTSD because of all of the trauma brought upon by the prior misdiagnosis. The doctors have also identified Ativan withdrawal delirium as the reason for Plaintiff's delusional behavior in the summer of 2019 which led to Plaintiff's third commitment. Plaintiff has also been diagnosed with Generalized Anxiety Disorder.

25. Plaintiff was never informed of her diagnosis of akathisia until treated at the University of Minnesota Fairview.

## COUNT 1
## CIVIL RIGHTS
## WRONGFUL CONFINEMENT

26. Reallege and incorporate by reference the statements and allegations contained in paragraphs 1-25 herein.

27. The Fourteenth Amendment (Art. XIV, U.S. Constitution) guarantees the liberty of mental health patients procedural due process preventing confinement by judicial commitments under the laws of the state of Minnesota without the application of a correct medical diagnosis requiring that a correct medical diagnosis based on a review of the patient's medical records supports a finding that the patient is either in danger to themselves or to others.

28. Prior to an order for commitment of an individual under Minnesota law, Minn. Stat. §253B.17a defines what is required to confine an individual under the standard of a "person who poses a risk of harm due to a mental illness" as follows:

(a) A person who poses a risk of harm due to a mental illness" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, that is manifested by instances of grossly disturbed behavior or faulty perceptions and who, due to this impairment, poses a substantial likelihood of physical harm to self or others as demonstrated by:
(1) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment;
(2) an inability for reasons other than indigence to obtain necessary food, clothing, shelter, or

medical care as a result of the impairment and it is more probable than not that the person will substantial harm, significant psychiatric deterioration or debilitation, or serious illness, unless appropriate treatment and services are provided;
    (3) a recent attempt or threat to physically harm self or others; or
    (4) recent and volitional conduct involving significant damage to substantial property.
    (b) a person does not pose a risk of harm due to mental illness under this section if the person's impairment is solely due to:
    (1) epilepsy;
    (2) development disability;
    (3) brief periods of intoxication caused by alcohol, drugs, or other mind-altering substances, or
    (4) dependence upon or addiction to any alcohol, drugs, or other mind-altering substances.

29. On August 24, 2019, Plaintiff was brought to the Emergency Department at St. Joseph's Medical Center, Essential Health in Brainerd, Minnesota, suffering from withdrawal symptoms caused by Plaintiff's voluntary discontinuance of Plaintiff's use of Ativan, previously prescribed for anxiety. Plaintiff's family disclosed that opinion at the time of admittance. Plaintiff's family disclosed that Plaintiff was not suicidal and Plaintiff gave no outward indications that she was suicidal.

30. Commitment proceedings were commenced immediately at the insistence of Defendant Marsha McMillen, a social worker employed by Defendant Cass County, Case No. 11-PR-19-1477.

31. The order for commitment in Case No. 11-PR-19-1477 was obtained under color of state law by government employees or others acting under the governments' appointment or supervision who unlawfully obtained an order for her commitment without regard to the statutory requirements or protocols.

32. Plaintiff was immediately sent to Prairie St. John's Hospital in Fargo, North Dakota where Plaintiff was confined from August 24, 2019 until September 25, 2019 even though no commitment order was in effect.

7

33. Plaintiff was sent to Community Behavioral Health Hospital in Alexandria, Minnesota where she was held from September 23, 2018 until November 2019. Plaintiff was then sent and confined at the Anoka Regional Treatment Center in Anoka, Minnesota until her commitment order expired on March 24, 2020.

34. Injunctive relief is requested because of plaintiff's reasonable fear of potential future Commitments obtained because of the past judicial records which may cause law enforcement or medical personnel to prejudge plaintiff's medical condition and bypassing the statutory requirements and protocols and proper medical evaluations which establish that commitment is not appropriate.

35. The plaintiff has suffered damages from her wrongful confinement due to permanently altering her physical condition, loss of revenue and potential future employment opportunities.

## COUNT 2
## CIVIL RIGHTS
## INVASION OF PRIVACY

36. Reallege and incorporate by reference the statement s and allegations contained in paragraphs 1-35 herein.

37. The Fourteenth Amendment (Art. XIV, U.S. Constitution) guarantees the liberty and protection of individuals with mental health conditions to be free of restraints and the freedom to choose to not be forced to take neuroleptic drugs without due process of law.

38. In Minn. Stat. §253B.03, a section entitled "Rights of Patients", a significant distinction is made between persons who are "mentally ill" as from persons under the influence of alcohol or drugs, when determining whether restrains or mandatory administration of neuroleptic drugs are permitted. That distinction was either negligently or intentionally disregarded by the admitting hospital and Cass County when the Petition for commitment was filed.

39. The Defendants were informed at the time of the Plaintiff's admission that she was suffering from an adverse reaction to her voluntary withdrawal of her prior use of Ativan. That information was ignored. Her condition was a diagnosable mental health condition which does not fall within the statutory definition of "mentally ill" which is illustrated as follows:

> Minn. Stat. §253B.03, Subd. 17a, **Person who poses a risk of harm due to a mental illness**.
> (a) A "person who poses a risk of harm due to a mental illness" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, that is manifested by instances of grossly disturbed behavior or faulty perceptions and who, due to this impairment, poses a substantial likelihood of physical harm to self or others as demonstrated by:
>   (1) A failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment;
>   (2) An inability for reasons other than indigence to obtain necessary food, clothing, shelter, or medical care as a result of the impairment and it is more probable than not that the person will suffer substantial harm, significant psychiatric deterioration or debilitation, or serious illness, unless appropriate treatment and services are provided;
>   (3) A recent attempt or threat to physically harm self or others; or
>   (4) Recent and volitional conduct involving significant damage to substantial property.
> (b) A person does not pose a risk of harm due to mental illness under this section if the person's impairment is solely due to:
>   (1) Epilepsy;
>   (2) Developmental disability;
>   (3) Brief periods of intoxication caused by alcohol, drugs, or other mind-altering substances; or
>   (4) Dependence upon or addiction to any alcohol, drugs, or other mind-altering substances.

40. Another section of the Minnesota statutes specifically addresses when neuroleptic drugs can be administered which was violated in this case. Minn. Stat. §253B.092sets forth the following requirements:

**253B.092 ADMINISTRATION OF NEUROLEPTIC MEDICATION.**

Subdivision 1. **General**. Neuroleptic medications can be administered, only as provided in this section, to patients subject to civil commitment under this chapter or chapter 253D. For purposes of this section, "patient" includes a proposed patient who is the subject of a petition for commitment and a committed person as defined in section 253D.02, subdivision 4.

Subdivision 2. Administration without judicial review. (a) Neuroleptic medications may be administered without judicial review in the following circumstances:

(1) The patient has the capacity to make an informed decision under subdivision 4;

(2) The patient does not have the present capacity to consent to the administration of neuroleptic medication, but prepared a health care power of attorney, a health care directive under chapter 145C, or a declaration under section 253B.03, subdivision 6d, requesting treatment or authorizing an agent or proxy to request treatment, and the agent or proxy has requested the treatment;

(3) The patient has been prescribed neuroleptic medication prior to admission to a treatment facility, but lacks the present capacity to consent to the administration of that neuroleptic medication, continued administration of the medication is in the patient's best interest, and the patient does not refuse administration of the medication, In this situation, the previously prescribed neuroleptic medication may be continued for up to 14 days while the treating medical practitioner:

(i)     Is obtaining a substitute decision-maker appointed by the court under subdivision 6; or

(ii)    Is requesting a court order authorizing administering neuroleptic medication or an amendment to a current court order authorizing administration of neuroleptic medication;

(4) A substitute decision-maker appointed by the court consents to the administration of the neuroleptic medication and the patient does not refuse administration of the medication; or

(5) The substitute decision-maker does not consent or the patient is refusing medication, and the patient Is in an emergency situation.

(c)  For purposes of paragraph (a), clause (3), if a person requests a substitute decision-maker or requests a court order administering a neuroleptic medication within 14 days, the treating medical practitioner may continue administering the mediation to the patient through the hearing date or until the court otherwise issues an order.

Subd. 3. Emergency administration.  A treating medical practitioner may administer neuroleptic medication to a patient who does not have capacity to make a decision regarding administration of the medication if the patient is in an emergency situation. Medication may be administered for so long as the emergency continues to exist, up to 14 days, if the treating medical practitioner determines that it is necessary to prevent serious, immediate physical harm to the patient or to others. If a request for authorization to administer medication is made to the court within 14 days, the treating medical practitioner may continue the medication through the date of the first court hearing, if the emergency continues to exist. If the request for authorization to administer medication is made to the court in conjunction with a petition for commitment and

the court makes a determination at the preliminary hearing under section 253B.08, the treating medical practitioner may continue the medication until that hearing, if the emergency continues to exist. The treatment facility, state-operated treatment program, or community-based treatment program shall document the emergency in the patient's medical record I specific behavioral terms.

**Subd. 4. Patients with capacity to make informed decision.** A patient who has the capacity to make an informed decision regarding the administration of neuroleptic medication may consent or refuse consent to administration of the medication. The informed consent of the patient must be in writing.

**Subd. 5. Determination of capacity.** (a) There is a rebuttable presumption that a patient has the capacity to make decisions regarding administration of neuroleptic medication.
(c) A patient has the capacity to make decisions regarding the administration of neuroleptic medication if the patient:

(1) Has an awareness of the nature of the patient's situation, including the reasons for the hospitalization, and the possible consequences of refusing treatment with neuroleptic medications;

(2) Has an understanding of treatment with neuroleptic medications and the risks, benefits, and alternatives; and

(3) Communicates verbally or nonverbally a clear choice regarding treatment with neuroleptic medications that is a reasoned one not based on a symptom of the patient's mental illness, even though it may not be in the patient's best interests.

(d) Disagreement with the medical practitioner's recommendation alone is not evidence of an unreasonable decision.

**Subd. 8. Procedure when patient refuses neuroleptic medication.** (a) If the substitute decision-maker or the patient refuses to consent to treatment with neuroleptic medications, and absent an emergency as set forth in subdivision 3, neuroleptic medications may not be administered without a court order. Upon receiving a written request for a hearing, the court shall schedule the hearing within 14 days of the request. The matter may be heard as part of any other district court proceeding under this chapter. By agreement of the parties or for good cause shown, the court may extend the time of hearing an addition 30 days.

41. Plaintiff was sent, without her permission, and prior to court order, to Prairie St. John's Hospital in Fargo, North Dakota. During Plaintiff's hospitalization at Prairie St. John's Hospital in Fargo, North Dakota, she was treated by Dr. Ryan Greene, the primary psychiatrist there. As soon as Plaintiff arrived at the hospital, she was injected with Halidon, Ativan and Benadryl,

11

commonly called as a "B-52". The injection was given over Plaintiff's continuous objections. The injections aggravated Plaintiff's akathisia.

42. On September 23, 2019, Plaintiff was transferred to Community Behavior Health Hospital in Alexandria, Minnesota, where Plaintiff was treated by Dr. Aminar Ali.

43. The Order for commitment, entered pursuant to the Petition filed on August 24th, was not entered until September 24, 2019. The Order placed the Plaintiff in the custody of the Minnesota Commissioner of Human Services for a period of six months.

44. On October 1, 2019, a Petition for Authorization to Administer treatment and Request for Hearing was filed by Julie M. Nohre, on behalf of the Community Behavioral Health Hospital in Alexandria, Minnesota, seeking authorization to coerce the administration of numerous neuroleptic medications, including Haldol, which is known to cause akathisia. The Petition included affidavits from Dr. Ali and Julie Nohre.

45. The coerced injections of Haldol and other neuroleptics, over the Plaintiff's continued objections, were forcibly administered under "color of state law", first without a court order and later under a court order that did not consider the medical history of the Plaintiff available to the Defendants prior to seeking the court orders.

46. The Plaintiff has a reasonable and imminent fear of having to endure future forced injections of Haldol and other neuroleptics based on her experience of having her medical history and her objections ignored and having untrained or negligent government officials and medical practitioners continuing to force Plaintiff under color of state law to injections of Haldol and other dangerous drugs over her objections and without her consent.

47. The Plaintiff has suffered damages in the form of pain and torment and continued

suffering caused by the unauthorized and unlawfully obtained court orders requiring Plaintiff to receive harmful neuroleptic medications.

## COUNT 3
## MEDICAL MALPRACTICE
## MISDIAGNOSIS/HARMFUL PRESCRIPTIONS

48. Reallege and incorporate by reference the statements and allegations contained in paragraphs 1-47 herein.

49. The Plaintiff was placed under the care of defendant physicians and hospitals arising with the prescribed drugs to treat Plaintiff for anxiety arising from her decision to change jobs.

50. The defendants failed to exercise the care required by law of a physician acting under the same or similar circumstances in failing to render appropriate and proper medical care in the manner is which such defendants prescribed medications, treatment and information.

51. More specifically, the defendant physicians and hospitals failed to adhere to appropriate medical practice in the following:

(a) The prescription for Haldol and other neuroleptics for treatment of the Plaintiff for Anxiety, wrongfully diagnosed as bipolar disease has been demonstrated to aggravate Plaintiff's preexisting neurological medical issues and to cause the condition of tardive akathisia.

(b) The defendants prescribed drugs after making a diagnosis of the cause of the problem which was alleged to be present at the times involved.

(c) The defendants instructed and coerced the Plaintiff to continue taking the drugs even though defendant knew and were advised by the patient that the drug made her ill.

(d) The defendant physicians forced the plaintiff to take the harmful drugs without the benefit of appropriate laboratory tests and analysis.

(e) The defendant physicians failed to administer appropriate treatment due to the misdiagnosis and failed to institute appropriate therapy and treatment to resolve the medical condition of akathisia.

(f) The physicians prescribed drugs in inappropriate combinations, specifically in the prescription of the drugs Haldol, Ativan and Benadryl, commonly referred to as the "B-52", which was antithetical to the treatment for akathisia.

52. All of the above-mentioned acts on the part of defendant physicians and hospitals were the direct and proximate cause oof the brain damage, permanent injury and economic losses experience by the plaintiff

53. The failure to render appropriate treatment has resulted in Plaintiff suffering permanent and irreversible physical and emotional damages.

**WHEREFORE**, Plaintiff requests judgment of this Court as follows:

1. Awarding the Plaintiff actual damages for her state and federal claims in excess of $75,000.00,

2. Declaratory relief mandating that in civil commitment proceedings inquiry is required by the persons and institutions seeking commitment that specific findings be made into whether the individual is in danger of committing harm to themselves;

3. Declaratory relief mandating that prior to ordering the administration of neuroleptic drugs without consent that inquiry be made and specific findings are required as to whether the drugs may be harmful to the individual;

4. For injunctive relief to prevent the government agencies, hospitals and law

enforcement from confining the Plaintiff against her will without inquiry into and specific findings that Plaintiff is a danger to herself or others and not suffering from non-mental illness causes;

     5. Expunging all prior commitment related proceedings involving the Plaintiff.

     6. Awarding the Plaintiff her reasonable attorney fees, costs and disbursements pursuant to 42 U.S.C. §1988;

     7. As and for whatever and further relief the Court deems just and proper.

Dated: August 20, 2021.             **HOLSTAD AND KNAAK, PLC**

                                          /s/ Wayne B. Holstad
                                          Wayne B. Holstad #0124461
                                          4501 Allendale Drive
                                          St. Paul, MN55127
                                          (651) 490-9078
                                          wholstad@klaw.us

### ACKNOWLEDGMENT

It is acknowledged that sanctions may be imposed for actions constituting violations of Minn. Stat. §549.211.

Dated: August 20, 2021                          /s/ Wayne B. Holstad
                                                 Wayne B. Holstad