UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Catherine Brennan,                                    File No. 21-cv-1900 (ECT/LIB)

        Plaintiff,

v.

Cass County Health, Human and Veteran
Services; Marsha McMillen, *in her official*                 **OPINION AND ORDER**
*capacity*; Community Behavioral Health
Hospital; Essentia Health St. Joseph's
Medical Center; Essentia Health; Dr. David
Anderholm, *doing business as Northern
Psychiatric Associates*; and PSJ Acquisition,
LLC, *doing business as Prairie St. John's
Hospital*,

        Defendants.

---

Wayne B. Holstad, St. Paul, MN, for Plaintiff Catherine Brennan.

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, MN, for Defendants Cass County
Health, Human and Veteran Services and Marsha McMillen.

Cally R. Kjellberg-Nelson and Dyan J. Ebert, Quinlivan & Hughes, PA, St. Cloud, MN,
for Defendants Essentia Health St. Joseph's Medical Center and Essentia Health.

Kevin McCarthy, Mark A. Solheim, and Taylor R. McKenney, Larson King LLP, St. Paul,
MN, for Defendant Dr. David Anderholm.

Christopher G. Angell and Richard J. Thomas, Burke & Thomas, P.L.L.P., Arden Hills,
MN, for Defendant PSJ Acquisition, LLC.

---

       Plaintiff Catherine Brennan alleges that Defendants violated her rights under the

federal Constitution and committed medical malpractice under Minnesota law in

connection with her 2019 civil commitment. She seeks damages, expungement of "all

prior commitment related proceedings involving [her]," injunctive and declaratory relief concerning possible future commitment proceedings against her, and attorneys' fees. Three Defendants—Essentia Health St. Joseph's Medical Center, Essentia Health, and PSJ Acquisition, LLC—have filed motions to dismiss Brennan's operative Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). All three of these Defendants challenge Brennan's claims under 42 U.S.C. § 1983. St. Joseph's Medical Center and Essentia Health also seek dismissal of Brennan's state-law medical malpractice claim. The motions will be granted because Brennan's Amended Complaint lacks factual allegations plausibly establishing essential elements of these claims with respect to these Defendants.[1]

I[2]

*The parties.* Brennan is a resident of Pequot Lakes, Minnesota. Am. Compl. [ECF No. 6] ¶ 5. Until 2015, Brennan was employed as an English teacher in Pine River,

---

[1]    Brennan's assertion of § 1983 claims means there is subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343. And Brennan's § 1983 and state-law medical-malpractice claims plausibly arise out of a common factual nucleus, making the exercise of supplemental jurisdiction over the medical-malpractice claim appropriate. Brennan alleges there is also diversity jurisdiction. Am. Compl. ¶ 3. This is not correct. Brennan is alleged to be a citizen of Minnesota, as are some Defendants. *See Strawbridge v. Curtiss*, 3 Cranch 267, 2 L. Ed. 435 (1806).

[2]    In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from Brennan's Amended Complaint. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Brennan asserts that her opposition brief "incorporates the facts set forth in her Complaint and additional facts found in the plaintiff's commitment proceedings prior to the proceeding upon which this action is based and the medical records found in the prior proceedings on the principal of judicial notice." Pl.'s Mem. in Opp'n [ECF No. 43] at 1. Through a declaration, Brennan's counsel filed 99 pages of documents concerning Brennan's civil commitments and medical care. *See* Holstad Decl. [ECF No. 44]. Several of these documents are publicly filed court orders and related court filings alluded to in the Amended Complaint. No Party objects to the consideration of these

Minnesota. *Id.* ¶ 13. Essentia Health St. Joseph's Medical Center is a corporation doing business as St. Joseph's Medical Center in Brainerd, Minnesota. *Id.* ¶ 9. Essentia Health is a corporation headquartered in Duluth, Minnesota, that operates St. Joseph's Medical Center. *Id.* PSJ Acquisition, LLC does business as Prairie St. John's Hospital, a psychiatric hospital in Fargo, North Dakota. *Id.* ¶ 10.

*Brennan's 2019 civil commitment.* Brennan has a history of being civilly committed due to mental illness. *See id.* ¶¶ 15–18 (describing a series of civil commitments occurring from September 2015 through January 2018). On August 24, 2019, Brennan was transported to St. Joseph's Medical Center in Brainerd out of concerns for her mental health and safety. *Id.* ¶¶ 20, 29; *see also* Holstad Decl. [ECF No. 44] at 73–74 (alleging circumstances leading to hospital admission). Later that day, Brennan was transported from St. Joseph's Medical Center to Prairie St. John's Hospital in Fargo. Am. Compl. ¶ 21. On August 28, Marsha McMillen, a social worker with Cass County Health, Human and Veterans Services, filed a Petition for Judicial Commitment in Cass County District Court. *Id.* ¶ 20; Holstad Decl. at 71–76.[3] That same day, a Cass County District Judge ordered that Brennan be confined at Prairie St. John's Hospital "for observation, evaluation,

---

documents and considering them seems appropriate. *See Greene v. Osborne-Leivian*, No. 19-cv-533 (ECT/TNL), 2021 WL 949754, at *2 n.3 (D. Minn. Mar. 12, 2021).

[3]    In the Amended Complaint, Brennan alleges that the Petition for Judicial Commitment was filed the "same day" she was admitted to St. Joseph's Medical Center, or August 24. Am. Compl. ¶ 20. Not that it really matters, but the Petition itself—in a header on every page and in the signature block—shows it was filed August 28. *See* Holstad Decl. at 71–76. According to the Petition, a physician with St. Joseph's Medical Center, Dr. Rebecca L. Holcomb, authorized an "Emergency Hold" on Brennan. *Id.* at 73. Brennan was then transferred to Prairie St. John's Hospital. *Id.* at 74.

diagnosis, treatment and care" and scheduled a preliminary commitment hearing for the next day, August 29.  Holstad Decl. at 77–78.  Following the August 29 preliminary commitment hearing, the Cass County District Judge determined that Brennan was likely to suffer "serious physical harm" if she was not confined and ordered her "confined at Prairie St. John's or an appropriate facility" pending a commitment hearing the judge scheduled for September 10.  *Id.* at 80.  On September 24, a Cass County District Judge entered an order civilly committing Brennan for six months beginning September 23.  *Id.* at 84–86.  Brennan was confined at Prairie St. John's Hospital until September 23, 2019. Am. Compl. ¶ 21.  She "was then sent to the Community Behavioral Health Hospital in Alexandria, Minnesota."  *Id.* ¶ 22.

*Brennan's allegations concerning St. Joseph's Medical Center.*  Brennan describes St. Joseph's Medical Center's corporate structure and location.  *Id.* ¶ 9.  Brennan alleges she was brought there on August 24 and transferred to another facility the same day.  *Id.* ¶¶ 20–21.  She alleges that when she arrived at St. Joseph's Medical Center, she was "suffering from withdrawal symptoms caused by [her] voluntary discontinuance of . . . Ativan, previously prescribed for anxiety" and that her "family disclosed that opinion at the time of admittance."  *Id.* ¶ 29.  Brennan also alleges that her "family disclosed that [she] was not suicidal and . . . gave no outward indications that she was suicidal."  *Id.*[4]

*Brennan's allegations concerning Prairie St. John's Hospital.*  Brennan describes Prairie St. John's Hospital's corporate structure and location.  *Id.* ¶ 10.  Brennan alleges

---

[4]     Apart from its corporate identity and corporate relationship to St. Joseph's Medical Center, Brennan alleges no facts regarding Essentia Health.  *See generally* Am. Compl.

that, "[p]rior to the time that [she] was formally committed and any hearing or order authorizing any of the Defendants to administer neuroleptic drugs," she was admitted to Prairie St. John's and confined there until September 23, 2019. *Id.* ¶ 21. She alleges that her "primary psychiatrist there was Dr. Ryan Greene, whose diagnosis was akathisia, brought on by Haldol injections." *Id.*[5] And Brennan alleges again later in her Amended Complaint that she "was immediately sent to Prairie St. John's Hospital . . . where [she] was confined from August 24, 2019 until September 25, 2019 even though no commitment order was in effect." *Id.* ¶ 32. She includes similar allegations several paragraphs later:

> Plaintiff was sent, without her permission, and prior to court order, to Prairie St. John's Hospital in Fargo, North Dakota. During Plaintiff's hospitalization at Prairie St. John's Hospital in Fargo, North Dakota, she was treated by Dr. Ryan Greene, the primary psychiatrist there. As soon as Plaintiff arrived at the hospital, she was injected with Halidon, Ativan, and Benadryl, commonly called "B-52." The injection was given over Plaintiff's continuous objections. The injections aggravated Plaintiff's akathisia.

*Id.* ¶ 41.

*Brennan's claims.* The Amended Complaint includes three counts, and every count seems to be asserted against every Defendant. In Count I, entitled "CIVIL RIGHTS WRONGFUL CONFINEMENT," Brennan alleges:

---

[5]   "Akathisia" is "[a] syndrome characterized by an inability to remain seated, with motor restlessness and a feeling of muscular quivering; [it] may appear as a side effect of antipsychotic and neuroleptic medication." *Stedman's Medical Dictionary* 42 (28th ed. 2006). Brennan alleges that she was hospitalized at the Community Behavioral Health Hospital in Baxter, Minnesota, from November to December 2015, and then again from January to March 2016. Am. Compl. ¶ 16. She alleges on information and belief that she was first diagnosed with akathisia during these hospitalizations, though she alleges that she was not informed of that diagnosis. *Id.*

5

> The Fourteenth Amendment (Art. XIV, U.S. Constitution) guarantees the liberty of mental health patients procedural due process preventing confinement by judicial commitments under the laws of the State of Minnesota without the application of a correct medical diagnosis requiring that a correct medical diagnosis based on a review of the patient's medical records supports a finding that the patient is either in danger to themselves or others.

Am. Compl. ¶ 27 (grammar and punctuation errors in original). Brennan quotes from a Minnesota statute, Minn. Stat. § 253B.02, subd. 17a, which she alleges "defines what is required to confine an individual" who is alleged to pose a risk of harm due to mental illness. Am. Compl. ¶ 28. She then repeats the circumstances of her 2019 commitment and alleges it was "wrongful." *Id.* ¶¶ 29–35.

In Count II, entitled "CIVIL RIGHTS INVASION OF PRIVACY," Brennan alleges:

> The Fourteenth Amendment (Art. XIV, U.S. Constitution) guarantees the liberty and protection of individuals with mental health conditions to be free of restraints and the freedom to choose not to be forced to take neuroleptic drugs without due process of law.

*Id.* ¶ 37. Brennan quotes at length from two Minnesota statutes, Minn. Stat. § 253B.02, subd. 17a, and § 253B.092, that regulate the civil commitment process. Am. Compl. ¶¶ 39–40. Brennan then alleges that the forced administration of neuroleptic medications during her commitment was "caused by the unauthorized and unlawfully obtained court orders requiring Plaintiff to receive harmful neuroleptic medications." *Id.* ¶ 47. Though neither Count I nor Count II refers to § 1983, Brennan alleges earlier in the Amended Complaint that these constitutional violations "giv[e] rise to a cause of action under 42

U.S.C. § 1983." *Id.* ¶ 1.  In their submissions, the moving Defendants treat Counts I and II as arising under § 1983, and Brennan does not dispute that characterization.  In Count III, called "MEDICAL MALPRACTICE MISDIAGNOSIS/HARMFUL PRESCRIPTIONS," Brennan alleges that "the defendant physicians and hospitals failed to adhere to appropriate medical practice" in prescribing and forcing her to ingest neuroleptic drugs.  *Id.* ¶ 51.

## II

## A

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Allegations establishing "a sheer possibility that a defendant has acted unlawfully" are not sufficient.  *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  As our Eighth Circuit Court of Appeals explained in *Gregory v. Dillard's, Inc.*:

> [A] plaintiff must assert facts that affirmatively and plausibly
> suggest that the pleader has the right he claims . . . , rather than
> facts that are merely consistent with such a right. While a
> plaintiff need not set forth detailed factual allegations or
> specific facts that describe the evidence to be presented, the
> complaint must include sufficient factual allegations to provide
> the grounds on which the claim rests. A district court,
> therefore, is not required to divine the litigant's intent and
> create claims that are not clearly raised, and it need not conjure
> up unpled allegations to save a complaint.

565 F.3d 464, 473 (8th Cir. 2009) (en banc) (cleaned up).[6]

B

1

The moving Defendants first argue that Brennan's § 1983 claims in Counts I and II must be dismissed (regardless of what constitutional violation they implicate) because Brennan has failed to allege facts plausibly showing that they are state actors. "The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). "Only state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). "Under [the Supreme] Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function;

---

[6]   Brennan cites *Conley v. Gibson*, 355 U.S. 41 (1957). Pl.'s Mem. in Opp'n at 10. But *Twombly*, 550 U.S. at 561–63, overruled *Conley* and its "no set of facts" standard. *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 806 (2013) (Colloton, J. concurring in part and dissenting in part).

8

(ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citations omitted); *see Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting [ ] 'under color' of [state] law for purposes of § 1983 actions.").

Regarding the exclusive-public-function category, in *Doe v. North Homes, Inc.*, the Eighth Circuit addressed whether a § 1983 plaintiff (Doe) alleged facts plausibly showing that a private entity (North Homes) that owned and operated juvenile correctional and rehabilitation facilities in Northern Minnesota qualified as a state actor.  11 F.4th 633, 635 (8th Cir. 2021).  To answer that question, the court analyzed whether Doe "plausibly alleged that North Homes performed a public function[—that is, a function traditionally and exclusively performed by the state—]when it detained her."  *Id.* at 637.  The court determined that Doe had plausibly alleged North Homes performed a public function in detaining her.  *Id.* at 637–39.  Several allegations seem to have been essential to this determination.  Doe didn't just allege that "North Homes cared for juveniles whose liberties the state (counties) decided to restrict."  *Id.* at 638.

> She also alleged that the state (agencies) agreed to empower North Homes to run two units, through which North Homes could deprive residents of their liberties.  And she alleged that the state (legislatures, agencies, and courts) gave North Homes the power to detain residents in a correctional facility whenever it wanted and for whatever reason it saw fit.

*Id.* at 638.  In a concluding paragraph, the court summarized its holding by emphasizing the significance of Doe's plausible allegation that North Homes "caused her involuntary commitment in a *corrections* unit."  *Id.* at 639.

Regarding the joint-action category, the Eighth Circuit has explained that "[a] private party who willfully participates in joint activity with the State or its agents is considered a state actor."  *Youngblood*, 266 F.3d at 855 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  "In construing that test in terms of the allegations necessary to survive a motion to dismiss," the Eighth Circuit "has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor."  *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

The Amended Complaint's factual allegations do not plausibly show that St. Joseph's Medical Center, Essentia Health, or Prairie St. John's Hospital were state actors in connection with her 2019 civil commitment.  Brennan addresses § 1983's state-action element explicitly twice in the Amended Complaint.  First, she alleges:

> The order for commitment in Case No. 11-PR-19-1477 was obtained under color of state law by government employees or others acting under the government['s] appointment or supervision who unlawfully obtained an order for her commitment without regard to the statutory requirements or protocols.

Am. Compl. ¶ 31.  This allegation is not sufficient.  It identifies none of the "others acting under the government's appointment or supervision."  If the "others" this paragraph references are intended to be St. Joseph's Medical Center, Essentia Health, or Prairie St.

John's Hospital, that allegation would seem inconsistent with other allegations in the Amended Complaint to the effect that Cass County social worker McMillen filed the Petition for Judicial Commitment.  Am. Compl. ¶¶ 20, 30.  Regardless, "others" is too vague in this context to give any one Defendant (of the multiple Defendants) notice of what that Defendant is alleged to have done to qualify as a state actor in connection with Brennan's civil commitment.  Second, Brennan alleges:

> The coerced injections of Haldol and other neuroleptics, over the Plaintiff's continued objections, were forcibly administered under "color of state law", first without a court order and later under a court order that did not consider the medical history of the Plaintiff available to the Defendants prior to seeking the court orders.

*Id.* ¶ 45.  This allegation too is insufficient.  It seems to convey that a private-entity Defendant or Defendants administered neuroleptic medications as state actor.  But no facts are alleged to show how or why this is so.  This allegation also suffers from the same group-pleading problem as the first, meaning it does not give any one Defendant notice of what made it a state actor.

There is more.  (a) Regarding St. Joseph's Medical Center, Brennan alleges she was brought there and transferred out the same day, and court documents show that civil commitment proceedings did not occur until after that transfer.  *See id.* ¶¶ 20–21 (alleging that Brennan was transferred from St. Joseph's to Prairie St. John's "[p]rior to the time that [she] was formally committed and any hearing or order authorizing any of the Defendants to administer neuroleptic drugs"); Holstad Decl. at 71–76.  It is difficult to understand how any Defendant might have been a state actor with respect to care provided before Brennan

was civilly committed.  (b) Beyond its corporate relationship to St. Joseph's Medical Center, Brennan alleges no facts hinting at how Essentia Health might have been involved in her care, much more a state actor.  (c) The Amended Complaint includes no allegations like those in *North Homes, Inc.* showing that the state gave any private-entity Defendant the power to detain Brennan "whenever it wanted to and for whatever reason it saw fit." 11 F.4th at 638.  Judged against the Amended Complaint's allegations, *North Homes, Inc.* is materially different from this case.  (d) Nor does the Amended Complaint include allegations hinting at a shared understanding between any private-entity Defendant and a state agent.  (e) Finally, Brennan cites no authority for the proposition that health care providers are state actors whenever they provide care to civil detainees.  Though Brennan argues in her opposition brief that her lawsuit "attacks the decision made by [Essentia]" to commence commitment proceedings based on a negligent diagnosis, Pl.'s Mem. in Opp'n at 6, the weight of authority does not support the conclusion that physicians who participate in civil commitment proceedings in this way are state actors.  *See Jones v. Diner*, No. 4:09CV00204 JMM, 2009 WL 1285842, at *2 (E.D. Ark. May 5, 2009) (collecting cases). Because Brennan has not alleged facts plausibly showing that St. Joseph's Medical Center, Essentia Health, or Prairie St. John's Hospital were state actors in connection with her 2019 civil commitment, her § 1983 claims in Counts I and II must be dismissed.

2

If they were state actors, the moving Defendants argue, Brennan's § 1983 "wrongful confinement" claim in Count I nonetheless should be dismissed because Brennan has not alleged that any relevant civil commitment order has been invalidated, reversed, or

expunged, a prerequisite to claiming wrongful confinement. This argument has its foundations in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. Heck was a prisoner who brought a § 1983 claim for damages while the appeal of his conviction was pending, alleging that officials involved in his conviction had conducted an unlawful investigation, destroyed exculpatory evidence, and introduced illegal evidence at trial. *Id.* at 479. Analogizing to a malicious prosecution claim, the Supreme Court recognized that requiring "termination of the prior criminal proceeding in favor of the accused" would "avoid[] parallel litigation" and preclude the possibility of conflicting resolutions, thus serving the interests of "finality and consistency." *Id.* at 484–85 (quotation omitted). The Supreme Court held that a § 1983 claim for wrongful conviction is not cognizable unless the conviction has been reversed, invalidated, expunged, or called into question by a writ of habeas corpus. *Id.* at 486–87.

The Eighth Circuit has extended *Heck* to civil-commitment challenges. In *Thomas v. Eschen*, the Eighth Circuit affirmed a district court's determination that a civil detainee lacked a cognizable § 1983 wrongful commitment claim because the civil commitment had not been invalidated in any way identified by *Heck*. 928 F.3d 709, 711–13 (8th Cir. 2019); *see also McHorse v. Minnesota*, No. 13-cv-837 (MJD/LIB), 2013 WL 2383603, at *3 (D. Minn. May 30, 2013) ("Plaintiff cannot maintain a civil action seeking release from custody, *or any other relief that would necessarily cast doubt on the validity of his confinement*, without first securing a court order specifically invalidating his civil commitment. In other words, Plaintiff must successfully challenge the civil commitment itself, in a legally appropriate forum and manner, (i.e., a state court action or appeal, or a

federal habeas corpus action), before he can seek a civil judgment based on any allegedly wrongful acts or omissions that may have precipitated or prolonged his civil commitment.").

Brennan's Amended Complaint does not meet this rule. Though Brennan asserts a § 1983 wrongful confinement claim, she has not alleged that any relevant civil commitment order has been invalidated. Seemingly to the contrary, she asks to have "all prior commitment proceedings involving [her]" expunged. Am. Compl. at 15, ¶ 5. Therefore, if the moving Defendants were state actors, Brennan's § 1983 wrongful confinement claim in Count I would fail under *Heck* and binding Eighth Circuit authorities.

3

The moving Defendants also argue that if they were state actors, Brennan's § 1983 "invasion-of-privacy" claim in Count II still would fail. This argument proceeds in two steps. First, Defendants argue that Brennan's Fourteenth Amendment invasion-of-privacy claim must be construed as an Eighth Amendment claim alleging deliberate indifference to medical needs. Second, Defendants argue that Brennan does not allege facts plausibly showing that any of them were deliberately indifferent to her medical needs.

A civilly committed individual's right to medical care "arises under the Due Process Clause of the Fourteenth Amendment." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (citation omitted); *see* U.S. Const. amend. XIV, § 1. When a person who is civilly committed alleges a Fourteenth Amendment claim of constitutionally deficient medical care, courts "apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quoting *Scott*, 742 F.3d at 339); *see*

*Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Ferch v. Jett*, No. 14-cv-1961 (SRN/TNL), 2016 WL 11394991, at *15–22 (D. Minn. Jan. 28, 2016) (applying deliberate indifference standard to civilly-committed individual's claim for improper administration of medication), *adopted as modified*, 2016 WL 916416, at *3 (D. Minn. March 10, 2016).

There really isn't much question that Count II of Brennan's Amended Complaint asserts this kind of claim. In support of the claim, Brennan alleges that Defendants ignored her relevant medical information and history, Am. Compl. ¶¶ 39, 45, injected her with medications that aggravated existing medical conditions, *id.* ¶ 41, and improperly failed to obtain Brennan's consent prior to treatment, *id.* ¶¶ 41, 45, 46. Given these allegations, Count II is best understood to allege a claim for constitutionally deficient medical care and, under binding precedent, must be analyzed under the Eighth Amendment's deliberate indifference standard.

"Whether an official was deliberately indifferent entails both an objective and a subjective analysis," and the application of the standard is a "factually-intensive inquiry." *Scott*, 742 F.3d at 339–40 (quotation omitted); *see Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011). To prove deliberate indifference, a plaintiff must show that "(1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs." *Mead*, 794 F.3d at 936 (citation omitted). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Fourte v. Faulkner Cnty.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)); *see Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their

professional judgment, they refuse to implement a prisoner's requested course of treatment.").

Begin with the second element. "Deliberate indifference is more than negligence, more even than gross negligence . . . ." *Fourte*, 746 F.3d at 387 (cleaned up); *see Smith v. Clarke*, 458 F.3d 720, 724 (8th Cir. 2006) ("Malpractice alone is not actionable under the [E]ighth [A]mendment."). The requisite mental state is "akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006); *see Farmer v. Brennan*, 511 U.S. 825, 839–40 (1970). A plaintiff must show both that the defendant had actual knowledge that the plaintiff's medical condition created a substantial risk of serious harm and that the defendant failed to act to abate that risk. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Long*, 86 F.3d at 765 ("[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge."). "Deliberate indifference may be demonstrated by [those] who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by [ ] doctors who fail to respond to . . . serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1235, 1239 (8th Cir. 1997). However, "[a]s long as this threshold is not crossed, [civilly committed individuals] have no constitutional right to receive a particular or requested course of treatment, and [] doctors remain free to exercise their independent medical judgment." *Id.*

CASE 0:21-cv-01900-ECT-LIB   Doc. 48   Filed 04/11/22   Page 17 of 20

The Amended Complaint does not include allegations plausibly showing that St. Joseph's Medical Center, Essentia Health, or Prairie St. John's Hospital were deliberately indifferent. Brennan seems to allege that her medical treatment was deficient because she was forcibly injected with neuroleptic medications without her consent, aggravating a pre-existing condition. Am. Compl. ¶¶ 38, 41, 44, 45. But Brennan does not allege any facts plausibly showing how this aspect of her care exceeded gross negligence. Missing from the Amended Complaint are, for example, allegations showing which Defendant knew what about Brennan's medical condition that, in turn, meant a Defendant or Defendants knowingly created a substantial risk of harm by administering neuroleptic medications to Brennan. In addition to this problem, Count II suffers from the same problems described earlier in connection with the state-actor issue. Brennan alleges no claim-specific facts regarding Essentia Health. Count II includes no apparent mention of St. Joseph's Medical Center. And Count II at times references "Defendants" generally, *see id.* ¶ 45, at least making it impracticable for some Defendants to know what Brennan alleges they did that shows deliberate indifference.

C

St. Joseph's Medical Center and Essentia Health also seek dismissal of Brennan's medical-malpractice claim (Count III). "Under Minnesota law, the elements of a medical malpractice claim are that: (1) the defendant owed a duty to the plaintiff to act with the applicable standard of care; (2) the defendant departed from that standard of care; and (3) the departure caused the plaintiff injury." *Preston v. Sumstad*, No. 20-cv-2103 (NEB/DTS), 2021 WL 1116400, at *3 (D. Minn. March 24, 2021) (citing *Smits as Tr. for*

*Short v. Park Nicollet Health Servs.*, 955 N.W.2d 671, 678 (Minn. Ct. App. 2021), review

granted (May 18, 2021)).

The Amended Complaint does not include allegations plausibly showing these

elements with respect to St. Joseph's Medical Center or Essentia Health.  Brennan alleges

that she suffered "brain damage, permanent injury and economic losses" and "physical and

emotional damages."  Am. Compl. ¶¶ 52–53.  Though there is room for misunderstanding,

Brennan seems to allege that "defendant physicians and hospitals failed to adhere to

appropriate medical practice" when they (1) prescribed and forcibly administered

neuroleptic medications, and (2) "failed to institute appropriate therapy and treatment to

resolve the medical condition of akathisia."  *See id.* ¶¶ 51(a)–(f).  Brennan seems to allege

that the prescription and administration of neuroleptic medications were negligent because

they were based on an incorrect diagnosis of "bipolar disease" and worsened Brennan's

health.  *See id.*  The main problem with these allegations is that they lump all Defendants

together.  Brennan doesn't allege which Defendant or Defendants did what.  In the context

of this multi-Defendant case, that doesn't give St. Joseph's Medical Center or Essentia

Health notice of the claims against them.  In addition to that problem, Brennan does not

allege that Essentia Health ever treated her.  (Again, beyond its corporate identity and

relationship to St. Joseph's Medical Center, the Amended Complaint includes no

allegations concerning Essentia Health.)  Though it is true that Brennan alleges she spent

less than one day in the care of St. Joseph's Medical Center, she does not allege facts

describing her care there in a way that fits her malpractice theories.  She does not allege,

for example, that physicians associated with St. Joseph's Medical Center misdiagnosed any

condition or prescribed and forcibly administered neuroleptic medications.  Without those allegations, Brennan has no basis to—and does not—allege any facts plausibly showing why that kind of care might have departed from the relevant standard.  For these reasons, Brennan's medical malpractice claims against St. Joseph's Medical Center and Essentia Health must be dismissed.

*

Brennan amended her Complaint once as a matter of right before these motions were filed.  She chose to stand by the Amended Complaint in its present form.  She did not seek Defendants' agreement to amend a second time, and she did not request permission in the alternative to amend her Amended Complaint should these motions (or any one of them) be granted.  For these reasons, Brennan's claims that are the subject of this motion will be dismissed with prejudice.  *See Mell v. Minn. State Ag. Soc'y*, ___ F. Supp. 3d ___, No. 21-cv-1040 (ECT/KMM), 2021 WL 3862435, at *13–14 (D. Minn. Aug. 30, 2021).

### ORDER[7]

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

---

[7]     Defendant Minnesota Department of Human Services was dismissed previously from the action pursuant to a joint Stipulation of Dismissal.  *See* ECF Nos. 39, 42.  That Stipulation also included the dismissal of "allegations against . . . Community Behavioral Health Hospitals."  ECF No. 39.  Though Defendant Community Behavioral Health Hospital was not included in the Proposed Order submitted with that Stipulation for Dismissal, *see* ECF No. 40, it seems clear that Community Behavioral Health Hospital should have been dismissed pursuant to the Stipulation.  *See* ECF No. 39.  That oversight will be corrected in this Order.

1.      Defendants Essentia Health St. Joseph's Medical Center and Essentia Health's Motion to Dismiss [ECF No. 25] is **GRANTED**, and the Amended Complaint is **DISMISSED WITH PREJUDICE** as to Defendants Essentia Health St. Joseph's Medical Center and Essentia Health;

2.      Defendant PSJ Acquisition, LLC's Motion for Partial Dismissal [ECF No. 21] is **GRANTED**, and Counts I and II are **DISMISSED WITH PREJUDICE** as to Defendant PSJ Acquisition, LLC; and

3.      Pursuant to the parties' joint stipulation for dismissal [ECF No. 39], the action is **DISMISSED WITH PREJUDICE** as to Defendant Community Behavioral Health Hospital.


Dated:  April 11, 2022                        s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court