UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Catherine Brennan,

       Plaintiff,

v.

Cass County Health, Human and Veteran
Services; Marsha McMillen, *in her official
capacity*; and PSJ Acquisition, LLC, *doing
business as Prairie St. John's Hospital*,

       Defendants.

File No. 21-cv-1900 (ECT/LIB)

**OPINION AND ORDER**

Wayne B. Holstad, St. Paul, MN, for Plaintiff Catherine Brennan.

James R. Andreen and Samantha R. Alsadi, Erstad & Riemer, P.A., Minneapolis, MN, for
Defendants Cass County Health, Human and Veteran Services and Marsha McMillen.

Christopher G. Angell and Richard J. Thomas, Burke & Thomas, P.L.L.P., Arden Hills,
MN, for Defendant PSJ Acquisition, LLC.

Plaintiff Catherine Brennan alleges that Defendants violated her rights under the
federal Constitution and committed medical malpractice under Minnesota law in
connection with her 2019 civil commitment. She seeks damages, expungement of "all
prior commitment related proceedings involving [her]," injunctive and declaratory relief
concerning possible future commitment proceedings against her, and attorneys' fees.
Brennan originally sued eight Defendants, but a series of dismissal stipulations and an
earlier round of dispositive motions leave just three Defendants remaining. The previous
round of dispositive motions was addressed in *Brennan v. Cass Cnty. Health, Human and*

*Veteran Servs.*, No. 21-cv-1900 (ECT/LIB), 2022 WL 1090604 (D. Minn. Apr. 11, 2022), and familiarity with that order is presumed here.

Two motions require adjudication: (1) Defendants Cass County Health, Human and Veteran Services (the "Department") and Marsha McMillen, a Cass County social worker, seek dismissal of Brennan's operative Amended Complaint on jurisdictional and merits grounds. Their motion will be granted. The *Rooker-Feldman* doctrine precludes the exercise of subject-matter jurisdiction over Brennan's claims against these Defendants. If that weren't correct, these claims would fail on multiple merits grounds. (2) Defendant PSJ Acquisition, which does business as Prairie St. John's Hospital in Fargo, North Dakota, seeks summary judgment against Brennan's medical-malpractice claim[1] on the ground that Brennan failed to comply with a North Dakota medical-malpractice expert-disclosure statute. The motion will be granted. The better answer is that the North Dakota statute applies, and there is no dispute Brennan did not comply with it.

I

A

One might reasonably ask whether the dismissal motion filed by the Department and McMillen is procedurally proper. These two Defendants answered on October 20, 2021, ECF No. 38, and filed their motion roughly nine months later, ECF No. 87, relying in part on Rule 12(b)(6). "Technically, however, a Rule 12(b)(6) motion cannot be filed after an answer has been submitted." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th

---

[1]    Brennan also asserted § 1983 claims against PSJ, but those claims were dismissed in the first round of dispositive motions. *Brennan*, 2022 WL 1090604, at *4–7.

Cir. 1990); Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [including a motion under (b)(6)] must be made before pleading if a responsive pleading is allowed.").

The motion is nonetheless proper for essentially two reasons. First, it raises an issue of subject-matter jurisdiction (under the *Rooker-Feldman* doctrine), and that issue may be raised "at any time." Fed. R. Civ. P. 12(h)(3). Second, insofar as the merits are concerned, the motion relies on Rule 12(c) in addition to Rule 12(b)(6). Even if a Rule 12(b)(6) motion is untimely, the failure-to-state-a-claim defense may be raised in a later-filed Rule 12(c) motion. Fed. R. Civ. P. 12(h)(1), (2); *see CRST Expedited, Inc. v. TransAm Trucking, Inc.*, No. C16-52-LTS, 2018 WL 2016273, at *4 (N.D. Iowa Mar. 30, 2018).

B

Both the jurisdictional and merits aspects of the Department and McMillen's dismissal motion are evaluated under the Rule 12(b)(6) standards. The jurisdictional challenge is appropriately evaluated under Rule 12(b)(1), but this distinction makes no difference here. The Department and McMillen challenge only the Amended Complaint's sufficiency and rely only on materials embraced by the pleadings, making theirs a "facial" challenge to subject-matter jurisdiction. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). In analyzing a facial challenge, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). And a motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). !Allegations establishing "a sheer possibility that a defendant has acted unlawfully" are not sufficient. *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). As our Eighth Circuit Court of Appeals explained in *Gregory v. Dillard's, Inc.*:

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . ., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

565 F.3d 464, 473 (8th Cir. 2009) (en banc) (cleaned up).

C

The Department and McMillen seek dismissal on a jurisdictional ground: they argue that the *Rooker-Feldman* doctrine bars Brennan's claims against them. "In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments.'" *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments." *Id.* at 234; *see also Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction."). In *Exxon Mobil*, the Supreme Court noted that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too broadly, "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act. *Exxon Mobil*, 544 U.S. at 283. To check the lower federal courts' enthusiasm for the *Rooker-Feldman* doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in federal court by the losing party in state court "complaining of an injury caused by the state-court judgment" that "call[]

upon the District Court to overturn an injurious state-court judgment." *Id.* at 291–92. Importantly, the Court also explained that § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Some cases present straightforward *Rooker-Feldman* questions while others are more difficult. *See Athens/Alpha*, 715 F.3d at 234 (observing that "the scope of the *Rooker-Feldman* doctrine, even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins"); *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 756 (8th Cir. 2010) (Melloy, J. concurring) ("Indirect appeals from state-court judgments have been more controversial."). Examples are instructive. Consider *Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016). There, the plaintiff, Caldwell, sued his ex-wife (Lavender) and her attorney (DeWoskin) in a federal district court alleging they had violated the automatic stay by continuing to seek enforcement of a judgment of dissolution against Caldwell, including contempt sanctions, in Missouri state court after Caldwell had filed for bankruptcy. *Id.* at 1006–08. The Missouri state court "decided the automatic stay did not prevent it from holding Caldwell in contempt, and so held." *Id.* at 1007. The Missouri Court of Appeals later reversed the contempt judgment on grounds other than the automatic stay. *Id.* The federal district court entered summary judgment against Caldwell, determining that it

lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *id.* at 1008, and the Eighth Circuit reversed, *id.* at 1008–09.   The Eighth Circuit explained: "Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision by a state court—in which case the doctrine would apply—or seeks relief from the allegedly illegal act or omission of an adverse party." *Id.* at 1008 (citing *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016)). Caldwell sought only "compensation for injuries he allege[d] were caused by the actions DeWoskin and Lavender took to enforce the state court's [judgment] after the automatic stay was in place." *Id.* at 1009.  The Eighth Circuit concluded that "Caldwell's claims are not barred by *Rooker-Feldman* because they challenge the actions taken by DeWoskin and Lavender 'in seeking and executing the [state contempt orders],' rather than the state court orders themselves." *Id.* (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008); *see also Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) (recognizing that the *Rooker-Feldman* doctrine "is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings"); *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (recognizing that *Rooker-Feldman* applies "if the federal claims can succeed only to the extent the state court wrongly decided the issues before it").

Informative here, the Seventh Circuit has held in a series of persuasive decisions that "[t]he claim that a defendant in a [federal] civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine." *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir.

2006) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)); *see also Newman v. State of Ind.*, 129 F.3d 937, 940–41 (7th Cir. 1997); *Jackson v. Gardner*, 42 F.3d 1391 (7th Cir. 1994) (table); *cf. Dennis v. Sparks*, 449 U.S. 24 (1980).  As that court explained in *Nesses*:

> Were [the plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment[.]

68 F.3d at 1005 (internal citations omitted).

The claims Brennan asserts against the Department and McMillen are entirely barred by *Rooker-Feldman*.  Brennan's only discernable claim against the Department and McMillen is for wrongful confinement under 42 U.S.C. § 1983 and the Fourteenth Amendment.  Am. Compl. [ECF No. 6] ¶¶ 1, 26–35.  She alleges no facts connecting the Department or McMillen to her claims that she was wrongfully prescribed and forcibly administered neuroleptic medication, *see id.* ¶¶ 36–47, or for medical malpractice, *see id.* ¶¶ 48–53.  With respect to her wrongful confinement claim, Brennan alleges only that McMillen, while employed by the Department, filed the initial Petition for Judicial Commitment in Cass County District Court on August 24, 2019, *id.* ¶ 20, and that the Cass

County District Court's resulting commitment orders were "unlawfully obtained . . . without regard to the statutory requirements or protocols[,]" *id.* ¶ 31.   Alleging that McMillen's Petition did not give the Cass County District Court a legally sufficient "statutory" basis to enter its commitment orders seems the same thing as saying the Cass County District Court should have denied the Petition and that the court's commitment decisions were incorrect under Minnesota law.   Importantly, Brennan alleges no facts suggesting that the Department or McMillen did anything in the state court that might have violated some independent right belonging to Brennan.   Brennan does not allege, for instance, that McMillen acted in some way before the state district court that might independently (and plausibly) have violated Brennan's constitutional rights.   Thus alleged, Brennan's constitutional claims here "succeed only to the extent the state court wrongly decided the issues before it[,]" *Robins*, 631 F.3d at 925, which means they can't get past *Rooker-Feldman*.[2]

Brennan advances two arguments against application of the *Rooker-Feldman* doctrine, but neither is persuasive.   Brennan first argues that she lacked a meaningful opportunity in the state court "to defend herself from the allegations made against her." Pl.'s Mem. in Opp'n [ECF No. 94] at 10.   This expresses a procedural due process concern,

---

[2]     The relief Brennan requests confirms the understanding that Brennan merely claims the Cass County District Court's decisions were incorrect.   Apart from damages for wrongful confinement, Brennan seeks expungement of "all prior commitment related proceedings involving [her,]" *id.* at 15, ¶ 5 (following request for relief), including the 2019 commitment.   By definition, a request for expungement seeks to undo some prior, official action. *See Expunge*, Black's Law Dictionary (11th ed. 2019).   Here, that could only occur by reversing or somehow undoing the state-court commitment orders.

but Brennan here neither asserts a procedural due process claim nor alleges facts suggesting such a theory in her Amended Complaint.  Second, relying on *Simes v. Huckabee*, 354 F.3d 823 (8th Cir. 2004), Brennan argues that her failure to pursue federal claims in the state court means that *Rooker-Feldman* cannot prevent her from pursuing federal claims in this case.  Pl.'s Mem. in Opp'n at 10.  Brennan is correct in one sense: the court in *Simes* held that "the *Rooker-Feldman* doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits." 354 F.3d at 830.  The record here does not show that Brennan presented her federal claims to the state court.  Regardless, what distinguishes *Simes* from this case is the presence there of claims alleging that various defendants took actions in the state court process that allegedly violated the plaintiffs' rights under "a host of federal statutory and constitutional" provisions.  *Id.* at 826.  The *Simes* plaintiffs, in other words, alleged violations of their independent rights.  Brennan doesn't do that here.

Because *Rooker-Feldman* bars them, Brennan's claims against the Department and McMillen will be dismissed without prejudice.  *See Roiger v. Veterans Affs. Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *4 (D. Minn. Feb. 12, 2019) (collecting authorities for proposition that a dismissal for lack of subject-matter jurisdiction is without prejudice).

## D

If *Rooker-Feldman* did not bar Brennan's wrongful-confinement claim against the Department and McMillen, the claim would be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and binding Eighth Circuit authorities construing the *Heck* bar.  This is so for

the same reasons discussed in the prior opinion.  *See Brennan*, 2022 WL 1090604, at *6.

Brennan argues only that *Heck* does not apply to civil commitment proceedings.  Pl.'s

Mem. in Opp'n at 11–12.  This is not correct.  *See Thomas v. Eschen*, 928 F.3d 709, 711–

13 (8th Cir. 2019).[3]

E

If neither *Rooker-Feldman* nor *Heck* barred Brennan's claims, they would fail on

their merits for at least three alternative reasons.

*First*, Cass County Health, Human and Veteran Services is not an entity that may

be sued.  Under Federal Rule of Civil Procedure 17(b)(3), parties that are not individuals

or corporations may be sued depending on "the law of the state where the court is located."

Thus, this Court looks to Minnesota state law to determine whether a municipal entity may

be sued.  Under Minnesota state law, "every municipality is subject to liability for its torts

and those of its officers, employees and agents acting within the scope of their employment

or duties whether arising out of a governmental or proprietary function."  Minn. Stat. §

466.02 (2014).  A "county" is a "municipality" and thus may be sued.  *See* Minn. Stat. §

466.01, subdiv. 1 (2014) ("municipality means . . .  any county"); Minn. Stat. § 373.01,

subdiv. 1(a)(1) (2014) ("[e]ach county is a body politic and corporate and may sue and be

sued").  But courts in this District have repeatedly held that under Minnesota law, county

---

[3]     The prior opinion analyzed the *Heck* bar as a merits—that is, a non-jurisdictional—question.  Whether *Heck* poses a jurisdictional bar remains an open question in the Eighth Circuit, however.  *See Baca v. City of Parkville*, No. 5:19-cv-06057-RK, 2022 WL 1477445, at *5–6 (W.D. Mo. May 10, 2022) (citing competing authorities and concluding that the *Heck* bar is jurisdictional).

human services departments are not entities that may be sued.  *See Doe v. Mower Cnty. Health & Hum. Servs. Off. Child Support*, 18-cv-3221 (WMW/KMM), 2019 WL 3570870, at *3 (D. Minn. May 13, 2019), *R. & R. adopted*, 18-cv-3221 (WMW/KMM), 2019 WL 3824256 (D. Minn. Aug. 15, 2019) ("[C]ourts consistently hold that arms of local governments, such as county departments or county agencies, are not subject to suit."); *Simon v. Anoka Cnty. Soc. Servs.,* No. 12-cv-2754 (SRN/JSM), 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014) ("Although the actions of a county department or commission 'may subject the county itself to liability, [a county department or commission] itself is not a proper defendant subject to suit in a section 1983 lawsuit.'"); *Jones v. Brown Cnty. Fam. Servs*., No. 11-cv-568 (SRN/FLN), 2011 WL 3165052, at *1 (D. Minn. June 30, 2011), *R. & R. adopted*, No. 11-cv-568 (SRN/FLN), 2011 WL 3163308 (D. Minn. July 27, 2011) (holding that Brown County Family Services Department is not an entity that may be sued); *Follis v. Minn. Atty. Gen*., No. 08-cv-1348 (JRT/RLE), 2010 WL 3399674, at *7 (D. Minn. Feb. 16, 2010), *R. & R. adopted*, No. 08-cv-1348 (JRT/RLE), 2010 WL 3399958 (D. Minn. Aug. 26, 2010); *Neudecker v. Shakopee Police Dep't*, No. 07-cv-3506 (PJS/JJG), 2008 WL 4151838, at *11 (D. Minn. Sept. 3, 2008), *aff'd,* 355 Fed. Appx. 973 (8th Cir. 2009); *see also Hyatt v. Anoka Police Dep't*, 700 N.W.2d 502, 505 (Minn. Ct. App. 2005) ("While a municipal corporation such as the city has the authority to sue and be sued, its departments have not been given that specific authority.").  Under these authorities, Cass County Health,

Human and Veteran Services is not an entity subject to suit, and the claims against it would have to be dismissed on this ground.[4]

*Second*, to the extent she is named in her individual capacity, McMillen enjoys absolute immunity from claims arising from her initiation of the commitment proceedings against Brennan.  As discussed earlier, the sole basis for Brennan's claims against the Department and McMillen appears to be the initiation of commitment proceedings against Brennan, her resulting confinement, and Brennan's assertion that this violated her constitutional rights.  McMillen's actions in this regard are protected by absolute immunity, which stems from the absolute prosecutorial immunity that protects county attorneys and their assistants when they are acting within the scope of their prosecutorial authority.  *See McCuen v. Polk Cnty.*, 893 F.2d 172, 174 (8th Cir. 1990).  This "immunity [] extend[s] to cover all acts undertaken in the role of advocate in the judicial phase of criminal proceedings."  *Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir. 1987).  The specific conduct which Brennan appears to contend violated her rights occurred in McMillen's role as a social worker initiating commitment proceedings.  In this regard, McMillen's role is "functionally comparable to that of a prosecutor."  *See Charnesky v. Welsh*, No. 18-cv-2748 (ECT/KMM), 2019 WL 6464143, at *4 (D. Minn. Dec. 2, 2019) (quoting *Thomason v. SCAN Volunteer Servs., Inc*., 85 F.3d 1365, 1373 (8th Cir. 1996) (other citations omitted)); *Abdouch v. Burger*, 426 F.3d 982, 986 (8th Cir. 2005) (affirming that "social workers [are] analogous to prosecutors and therefore entitled to absolute immunity for their

---

[4]     Brennan does not address this issue in her opposition brief.

initiation of judicial proceedings"). Brennan argues that a "social worker is not a prosecutor." Pl.'s Mem. in Opp'n at 8. But she does not address the cited authorities saying that social workers in this context share the same absolute immunity as prosecutors.

*Third*, if Brennan means to assert a *Monell* claim against Cass County, she has not alleged facts plausibly showing the County has a relevant custom, policy, or practice. Brennan at times indicates that she intends to sue McMillen under § 1983 in her official capacity. "A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quoting *Monell*, 436 U.S. at 694). The Amended Complaint includes no allegations suggesting that the County's legal violations in civil-commitment proceedings resulted from a custom, policy, or practice. Brennan confirms this in her opposition brief. There, she makes clear that her claims depend only on actions taken in her commitment proceeding, not on some broader policy or practice:

> The plaintiff is claiming in her Complaint that the defendants Cass County and Marsha McMillan [sic], a social worker employed by Cass County Social Services, a department of Cass County, had the plaintiff wrongfully confined and transported without her consent to Prairie St. John's Hospital in Fargo, North Dakota, where she was administered harmful, neuroleptic drugs against her consent. The commitment

> proceedings brought by Marsha McMillan [sic]  were in violation of the governing Minnesota statute which requires a finding that a person must be harmful to oneself or to others.

Pl.'s Mem. in Opp'n at 4; *see also id.* at 7 (arguing that McMillen departed from statutory guidelines). *See, e.g.*, *Gutierrez v. Hoffman*, No. 19-cv-2857 (ECT/ECW), 2020 WL 5249566, at *2 (D. Minn. Sept. 3, 2020) ("Gutierrez's Complaint fails to state a claim against Defendants in their official capacities because he pleads only that Defendants did *not* follow official policy when he was removed from the vocational work program. . . . Gutierrez alleges no facts 'plausibly suggesting that the alleged failure to follow the Vocational Programming Policy was the result of any such policy or custom.'"); *see also Slaven v. Engstrom*, 848 F. Supp. 2d 994, 1009 (D. Minn. 2012), *aff'd* 710 F.3d 772 (8th Cir. 2013) (on summary judgment, plaintiffs failed to show county policy or custom was the "moving force" behind a constitutional violation where they had "not adduced any evidence that any arguable constitutional violation caused by Hennepin County, as opposed to the State of Minnesota, was anything more than a single and isolated incident of what may have been zealous prosecution and overstatement of facts, rather than a policy or custom of such conduct"). Having alleged (at most) a single incident, Brennan has not plausibly alleged a *Monell* claim.

## II

PSJ Acquisition's summary-judgment motion against Brennan's medical-malpractice claim raises one primary issue: Do Minnesota's choice-of-law factors favor applying a North Dakota statute that required Brennan to serve "an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within

three months of the commencement of the action"?  N.D. Cent. Code § 28-01-46.  Brennan

does not argue that she complied with the statute, so if the answer to this question is "yes,"

PSJ's summary-judgment motion must be granted.  I conclude that the North Dakota statute

applies here based on essentially the same analysis applied in *Perry, Tr. for Sherrell v.*

*Beltrami Cnty.*, 520 F. Supp. 3d 1115 (D. Minn. 2021).  Therefore, PSJ's summary-

judgment motion will be granted, and, in accord with the statute, Brennan's medical-

malpractice claim against PSJ will be dismissed without prejudice.

Summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is "material" only if its resolution might affect the outcome

of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Id.* at 255.

The facts regarding Brennan's admission to, and treatment at, Prairie St. John's

Hospital in Fargo, North Dakota, are described in the prior order, and familiarity with them

is presumed here.  *See Brennan*, 2022 WL 1090604 at *2.  Brennan's medical malpractice

claim against PSJ is based on this treatment.  *See* Am. Compl. ¶¶ 50–51.  Brennan

commenced this action by filing her original Complaint on August 23, 2021.  ECF No. 1;

Fed. R. Civ. P. 3.  To her Complaint, Brennan attached an "Affidavit of Expert Review"

signed under penalty of perjury by her attorney, stating in relevant part:

> Pursuant to Minn. Stat. § 145.682 Subd. 3(a), I have reviewed the facts of this case with an expert with over twenty years of experience in psychiatric diagnosis and treatment. The expert that I consulted has the qualifications which provide a reasonable expectation that her opinion will be admissible at trial. In her expert opinion, the defendants deviated from the applicable standard of care by those actions that have caused injury to the plaintiff.

ECF No. 1-2 ¶ 3. The record does not show, and Brennan seems to acknowledge, that she neither served nor filed any other affidavit describing proffered expert testimony. *See* Angell Decl. [ECF No. 68] ¶ 2 ("As of the date of this Declaration, Plaintiff Catherine Brennan has not served an affidavit containing an admissible expert opinion to support a prima facie case of medical malpractice against PSJ, identifying the name and business address of the expert, indicating the expert's field of expertise, and containing a brief summary of the basis for the expert's opinion."). Nor has Brennan requested an extension of time in which to do so.

"A federal court exercising supplemental jurisdiction over state law claims in a federal question action must apply the substantive law of the forum state, including its choice-of-law rules." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 813 (D. Minn. 2018) (citing *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state. . . .")). Courts in Minnesota follow a three-step process to answer choice-of-law questions. "[T]he first consideration is whether the choice of one state's law over another's creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn.

1994).  If a conflict exists, the next question is "whether the law of both states can be constitutionally applied"—*i.e.*, whether each state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id*. at 469–70 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)).  If the answer to both of these threshold questions is "yes," then the court applies five "choice influencing factors" to determine which state's law should apply: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id*. at 470 (citing *Milkovich v. Saari*, 203 N.W.2d 408, 412 (1973)).

Minnesota and North Dakota law on expert affidavits in medical malpractice actions conflict in relevant and substantive ways.  Though both states require medical malpractice plaintiffs to provide expert support for a claim during the litigation process, the two states' laws differ as to substance and timing of that support.  Minnesota law states, in relevant part:

> Subd. 2.  **Requirement.**  In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, clause (2), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of discovery under the Rules of Civil Procedure, rule 26.04(a) an affidavit as provided by subdivision 4.

Subd. 3. **Affidavit of expert review.** The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that:

(1) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or

(2) the expert review required by clause (1) could not reasonably be obtained before the action was commenced because of the applicable statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit in clause (1) must be served on defendant or the defendant's counsel within 90 days after service of the summons and complaint.

Subd. 4. **Identification of experts to be called.** (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of discovery under the Rules of Civil Procedure, rule 26.04(a).

Minn. Stat. § 145.682 subds. 2–4. Failure to comply with the affidavit requirement in subdivision 2, clause (1) results in "mandatory dismissal with prejudice," but only if the plaintiff has not provided the expert review affidavit "within 60 days after demand for the affidavit." *Id*. § 145.682, subd. 6(a); *Judah v. Ovsak*, 550 F. Supp. 3d 687, 706–07 (D.

Minn. 2021) (citations omitted).  North Dakota law provides a tighter timeframe for a slightly different affidavit:

> Any action for injury or death alleging professional negligence by a physician, nurse, hospital, or nursing, basic, or assisted living facility licensed by this state or by any other health care organization, including an ambulatory surgery center or group of physicians operating a clinic or outpatient care facility, must be dismissed without prejudice on motion unless the plaintiff serves upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action.  The court may set a later date for serving the affidavit for good cause shown by the plaintiff if the plaintiff's request for an extension of time is made before the expiration of the three-month period following commencement of the action.  The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion.  This section does not apply to unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

N.D. Cent. Code § 28-01-46.  These statutes obviously conflict in ways that are relevant here.

There is no realistic question that both states' laws could be constitutionally applied. Minnesota and North Dakota possess significant contacts with the facts giving rise to Brennan's claim.  Brennan seems to argue that North Dakota law may not constitutionally be applied because her transfer to North Dakota was either unnecessary or improper. Brennan asserts that she was sent "across state lines to bypass the state statutes enacted to protect persons like her," that "Prairie St. John's Hospital consented to the jurisdiction of Minnesota courts, state and federal, by accepting her as a patient with knowledge that she

20

was transferred from a Minnesota hospital," and that "[b]ecause [Brennan's] stay was against her will as part of a confinement ostensibly authorized by Minnesota statute, the injections of neuroleptic medications were also governed by Minnesota law."  ECF No. 73 at 5–6.  Brennan cites no authority that might support her position, and none of these assertions undermines the extent of the Minnesota and North Dakota contacts associated with her claim.  In other words, leaving aside the choice influencing factors, Brennan's assertions give no reason to think that application of North Dakota law to a malpractice claim against a North Dakota healthcare provider for treatment given in a North Dakota hospital would be arbitrary or fundamentally unfair.

The next step, then, is to apply Minnesota's choice-influencing factors.  *See Jepson*, 513 N.W.2d at 470.  *Perry* applied North Dakota's statutory cap on non-economic damages to a medical malpractice / wrongful death claim brought against Sanford Medical Center after a Beltrami County (Minnesota) inmate was treated at Sanford in Fargo, North Dakota, and later died from "untreated Guillian-Barre Syndrome."  520 F. Supp. 3d at 1122–26.  The following analysis, derived largely from *Perry*, results in a like conclusion here.

As in *Perry*, the first, third, and fifth factors are largely irrelevant in the present analysis.  *See id.* at 1122.  "The first factor, predictability of results, applies primarily to consensual transactions, and not to torts."  *Strohn v. Xcel Energy Inc.*, 353 F. Supp. 3d 828, 833 (D. Minn. 2018) (citing *Nesladek v. Ford Motor Co.*, 876 F. Supp. 1061, 1068 (D. Minn. 1994)).  This is because "[t]he objective of the predictability factor is to fulfill the parties' justified expectations," and tort actions, which generally "stem from unplanned accidents," do not implicate those expectations.  *Lommen v. City of East Grand Forks*, 522

21

N.W.2d 148, 150 (Minn. Ct. App. 1994). The third factor, "simplification of the judicial task," is also rarely significant in tort cases, at least when, as here, "the law of either state [can] be applied without difficulty." *Jepson*, 513 N.W.2d at 472; *see also Burks v. Abbott Labs.*, 639 F. Supp. 2d 1006, 1013 (D. Minn. 2009); *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 604 N.W.2d 91, 95 (Minn. 2000) (stating that this factor "has not been given much weight in" Minnesota Supreme Court precedent).[5] The fifth factor, the "better rule of law," does not apply at all when a court can resolve a choice-of-law question using the other four factors, and in any event, it is less significant when the conflict at issue involves state statutes, rather than common law. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1124 (8th Cir. 2012) (addressing competing statutes of limitations and noting that "[l]egislatures rather than courts are best positioned to assess the comparative merits of the competing policy concerns" involved). The analysis depends on the second and fourth factors.

The second factor, "maintenance of interstate order," concerns "whether the application of Minnesota law would manifest disrespect for North Dakota's sovereignty or impede the interstate movement of people and goods." *Jepson*, 513 N.W.2d at 471. The primary focus is on the contacts that each competing state has with the dispute. "[W]here a state 'has little or no contact with a case and nearly all of the significant contacts are with a sister state, the factor suggests that a state should not apply its own law to the

---

[5]     Minnesota courts have said "that the judicial task is obviously simplified when a Minnesota court applies Minnesota law," *Jacobson v. Universal Underwriters Ins. Grp*., 645 N.W. 2d 741, 746 (Minn. Ct. App. 2002) (citation omitted), but because the conflict here is straightforward, applying Minnesota law would not be any simpler. *See Nesladek v. Ford Motor Co*., 46 F.3d 734, 739 (8th Cir. 1995).

dispute.'" *Burks*, 639 F. Supp. 2d at 1013 (quoting *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620–21 (8th Cir. 2001)); *accord Johnson v. Parrish Tire Co.*, No. 06-cv-2267 (MJD/SRN), 2009 WL 10677525, at *5 (D. Minn. Mar. 30, 2009) ("[M]aintenance of interstate order weighs in favor of the state that has the most significant contacts with the facts relevant to the litigation."). In tort cases, the location of the accident may be an especially relevant contact, *see Strohn*, 353 F. Supp. 3d at 833 (applying Minnesota law because the defendant company provided a product in Minnesota and the product "caused significant personal injury and property damage in Minnesota"), but "the mere fortuity of an accident's location is not necessarily dispositive," *Sportsman v. California Overland, Ltd.*, No. 17-cv-1064 (DWF/KMM), 2018 WL 1865930, at *4 (D. Minn. Apr. 18, 2018).[6]

Minnesota and North Dakota both have somewhat significant contacts with Brennan's medical malpractice claim against PSJ, though North Dakota's contacts are stronger. True, Brennan is a Minnesota resident. She first visited a healthcare provider in Minnesota, but she alleges that she suffered injuries resulting from PSJ's malpractice in North Dakota. To the extent that Brennan alleged medical malpractice against any other health care provider, those claims have been extinguished. *See* ECF Nos. 48, 93. PSJ is a North Dakota resident, and all of PSJ's alleged wrongful conduct occurred in North Dakota. Under these circumstances, this factor supports applying North Dakota law.

---

[6]     Courts applying the interstate-order factor also consider whether there is evidence of forum shopping. *See Jepson*, 513 N.W.2d at 471. There is no indication of forum shopping here.

The fourth factor asks "which choice of law most advances a significant interest of the forum." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 95 (citation omitted). "It 'requires analysis not only of Minnesota's governmental interest, but also of [North Dakota's] public policy.'" *Murray v. Cirrus Design Corp.*, 2019 WL 1086345, at *3 (quoting *Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 596 (8th Cir. 2016); *see also Lommen*, 522 N.W.2d at 152 (considering "the relative policy interests of the two states"). "When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, . . . clearly the law of the interested state should be applied." *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 590 N.W.2d 670, 674 (Minn. Ct. App. 1999) (citation omitted). But in a tort case in which multiple states have a legitimate interest and there is no clear winner, "the state where the accident occurred has the strongest governmental interest." *Burks*, 639 F. Supp. 2d at 1013–14 (citation omitted).

Minnesota and North Dakota both have significant interests at play here. The parties agree that the legislative purpose of the expert-affidavit requirement is to eliminate frivolous or nuisance lawsuits. *See* Def.'s Mem. in Supp. [ECF No. 66] at 12; Pl.'s Mem. in Opp'n [ECF No. 73] at 4. Both Minnesota and North Dakota, in regulating their health care industry, have an interest in eliminating frivolous medical malpractice suits at an early stage of the proceedings. But PSJ resides in North Dakota, and any damages award would mainly affect that state's health care system. North Dakota and Minnesota have just prescribed different timeframes for complying with the expert-affidavit requirement. That the alleged medical malpractice occurred in North Dakota also slightly favors applying that state's law, even if the fortuitous nature of the conduct's location would not independently

require that result.  *See Burks*, 639 F. Supp. 2d at 1013–14.  Considering these factors, North Dakota has the stronger interest.

Brennan raises three counterarguments, all of which are unavailing.  First, as noted above, Brennan argues that her stay in North Dakota was against her will and "part of a continuous course of treatment that began in the emergency room of a Minnesota hospital" that was "part of a confinement ostensibly authorized by Minnesota statute," and thus Minnesota law governs the medical malpractice claim.  ECF No. 73 at 5–6.  Brennan cites no case to support this argument.  *Perry* rejected a comparable argument.  520 F. Supp. 3d at 1126 (explaining that "[w]hen a court is resolving a conflict of laws, however, state interests take on greater importance").  Second, Brennan argues that Minnesota's expert-affidavit statute should apply because "procedural rules of the forum state govern."  ECF No. 73 at 6.  This is not correct.  Federal, not state, procedural rules govern federal cases, and numerous courts have determined that North Dakota and Minnesota's expert-affidavit requirements apply in federal court under *Erie*.  *See LaFromboise v. Leavitt*, 439 F.3d 792, 793, 796 (8th Cir. 2006) (applying North Dakota statute); *Weasel v. St. Alexius Med. Ctr.*, 230 F.3d 348, 350–51 (8th Cir. 2000) (same); *Christianson v. McLean Cnty.*, No. 1:21-cv-073, 2022 WL 888454, at *1–2 (D.N.D. Mar. 25, 2022) (same); *Moore v. Cass Cnty. Jail Med. Dep't*, No. 3:08-cv-124, 2009 WL 10707085, at *2 (D.N.D. Jan. 9, 2009) (same); *Vogel v. Turner*, No. 11-cv-0446 (PJS/JJG), 2012 WL 5381788, at *3 (D. Minn. Nov. 1, 2012) ("Other judges in this district have found—and this Court agrees—that the affidavit-of-expert-review requirement of § 145.682 is a substantive, not a procedural, requirement.") (citing *Ellingson v. Walgreen Co.*, 78 F. Supp. 2d 965, 968 (D. Minn. 1999);

*Oslund v. United States*, 701 F. Supp. 710, 712–14 (D. Minn. 1988); *cf. Flores v. United States*, 689 F.3d 894, 899–900 (8th Cir. 2012)).  Finally, Brennan argues that she complied with the Minnesota statute.  In view of the determination that the North Dakota statute applies, this argument misses the mark.

To summarize, Minnesota's choice-of-law factors favor applying North Dakota's expert-affidavit requirement to Brennan's medical malpractice claim against PSJ.  Brennan has not complied with that statute.  She has filed no "affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action."  N.D. Cent. Code § 28-01-46.  She has made no request for an extension of time to do so, much more a "request . . . before the expiration of the three-month period following commencement of the action."  *Id.*  In accord with the statute, Brennan's claim against PSJ will be dismissed without prejudice.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant Cass County Health, Human and Veteran Services and Marsha McMillen's motion to dismiss [ECF No. 87] is **GRANTED** for lack of subject-matter jurisdiction.  Plaintiff's claims against Cass County Health, Human and Veteran Services and Marsha McMillen are **DISMISSED WITHOUT PREJUDICE**.

2.      Defendant PSJ Acquisition, LLC's motion for summary judgment [ECF No. 64] is **GRANTED**.  Plaintiff's medical malpractice claim against PSJ Acquisition, LLC (Count 3) is **DISMISSED WITHOUT PREJUDICE**.

3.      In light of the stipulation and related Order, filed at ECF Nos. 85 and 93,

Defendant Dr. David Anderholm's motion to dismiss [ECF No. 70] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 6, 2023                         s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court